**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 6, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ANGELA LaPLATNEY,

        Defendant-Appellant.

No. 05-8022

(D. of Wyo.)

(D.C. No. 04-CR-168-WFD)

---

**ORDER AND JUDGMENT** [*]

---

Before **KELLY** , **O'BRIEN** , and **TYMKOVICH** , Circuit Judges. [**]

---

A jury in the District of Wyoming found Angela LaPlatney guilty on one

count each of conspiracy to possess with intent to deliver and to distribute

methamphetamine pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851

(2004), and concealing a person from arrest pursuant to § 18 U.S.C. 1071 (2003).

LaPlatney argues on appeal that the court violated her constitutional rights in four

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders; nevertheless, an order may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

distinct ways: (1) the exclusion of the federal sentencing guidelines as a demonstrative aid violated her Sixth Amendment right to a fair trial; (2) the exclusion of a series of a witness's booking photographs during cross-examination similarly violated her Sixth Amendment right to a fair trial; (3) the failure of the court to instruct the jury regarding the weight to afford witness testimony resulted in inadequate jury instructions; and (4) the combination of these errors denied her a fundamentally fair trial.

We have jurisdiction under 28 U.S.C. § 1291. Because we find no error, we affirm.

## I. Background

The events leading to LaPlatney's federal charges began in September 2003, when she bonded her friend Michael Mills out of a Casper jail. It turned out, Mills, who later pleaded guilty to conspiracy to possess and distribute methamphetamine, had been improperly allowed out on bond. When federal authorities learned of Mills's release, they contacted LaPlatney for questioning. During an initial interview, LaPlatney misinformed the police about Mills's whereabouts. In a subsequent interview, she refused to give the federal agents any contact information.

In November 2003, another friend, Kristi Casciato, stayed at LaPlatney's apartment over the Thanksgiving holidays. During this stay, Casciato noticed that

Mills spent a substantial amount of time in the apartment and even babysat LaPlatney's two children. Learning that Mills was wanted on federal charges, Casciato contacted federal agents and agreed to arrange a meeting with Mills. On December 9, 2003, agents arrested Mills at LaPlatney's apartment. Later, LaPlatney also was arrested and charged with drug distribution and harboring a wanted person.

Both Mills and Casciato were key witnesses at LaPlatney's trial, testifying that LaPlatney harbored Mills and engaged in drug trafficking. LaPlatney's alleged constitutional deprivations relate to the testimony of these two witnesses.

## II. Analysis

### A. Sixth Amendment and Demonstrative Aids

LaPlatney first argues that the district court's refusal to allow her to use the federal sentencing guidelines as a demonstrative aid during Michael Mills's testimony denied her the right to present a defense. During cross-examination of Mills, LaPlatney attempted to use the guidelines, purportedly to clarify to the jury the likely reduction in Mills's sentence for cooperating with federal agents by testifying and consequently his incentive to lie. The district court refused, but did not otherwise restrict LaPlatney's ability to question Mills about his sentence reduction. Ruling that introduction of the guidelines table was neither relevant nor probative, the court expressed concern that showing the jurors the table would

potentially cause them to "think how [LaPlatney] might be sentenced if she's found guilty by them on one or more count." (Vol. 3 at 249).

We review a district court's decision to exclude evidence for abuse of discretion. *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005). While we ordinarily review de novo an allegation of a constitutional violation, *id.*, we review merely for plain error if such objection is not explicitly made below. *Id.* at 1238. However, this standard is inapplicable when the defendant fails to argue plain error on appeal. In such instances, we deem the constitutional issue waived. *Id.* Here, LaPlatney failed to make an explicit Sixth Amendment objection below and further failed to argue plain error on appeal; consequently, this argument is waived. Nevertheless, under any standard of review the district court committed no error.

LaPlatney argues that her inability to use the guidelines as a demonstrative aid impaired her right to present a defense. This right arises under both the Fifth and Fourteenth Amendment rights to due process as well as the Sixth Amendment right to compulsory process. *Id.* at 1239. It confers on the defendant the ability to present witnesses, and by necessity, "the right to have the jury hear the testimony those witnesses are called to give." *Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997). However, the ability to present such testimony is not without limits. The defendant is both "constrained by the twin prongs of

-4-

relevancy and materiality," *Solomon*, 399 F.3d at 1239, as well as the "established rules of evidence and procedure [which] assure both fairness and reliability in the ascertainment of guilt or innocence." *Richmond*, 122 F.3d at 871–72 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). Accordingly, in determining whether to permit such evidence, the court must balance the importance of such evidence to the case at hand against legitimate state interests in excluding such evidence. *Id.* at 872.

LaPlatney's right to a fair trial was not impeded. Even if the guidelines chart was relevant, LaPlatney fails to argue how its exclusion materially impeded her defense. *See id.* ("[M]aterial evidence is that which is exculpatory- evidence that if admitted would create reasonable doubt that did not exist without the evidence."). The district court allowed LaPlatney wide-latitude to cross-examine Mills concerning his knowledge of the federal sentencing guidelines generally, the application of the sentencing guidelines in his case, and the possibility of a reduction in his sentence under the guidelines. Indeed, as clearly demonstrated in the trial transcript, LaPlatney took full advantage of such an opportunity. Additionally, the court recognized that introduction of the guidelines could prejudice the jury by causing confusion or speculation about their application to her. As such, the court properly balanced these concerns against the exhibit's minimal relevance and materiality.

In summary, because the district court permitted LaPlatney to cross-examine Mills regarding the benefits he expected from the government, and because the court properly balanced the limited relevance and materiality of the guidelines chart against its potential prejudicial effect, the district court neither abused its discretion nor committed plain error. Accordingly, we conclude that LaPlatney's constitutional right has not been violated.

*B. Sixth Amendment and the Exclusion of Photographs*

LaPlatney next asserts that the exclusion of Kristi Casciato's booking photographs similarly denied her the right to present a defense. During the cross-examination of Casciato, LaPlatney attempted to admit a series of historical photographs in order to impeach Casciato concerning her prior and current use of methamphetamine. According to LaPlatney, the photographs would "give a pictorial record of a woman . . . who starts off in 1997 a beautiful young girl [and] [b]y the time we get to 2004, she looks like the meth posters we see all the time . . . ." (Vol. 3 at 379). The court ruled that the photographs were inadmissible, stating "I think you're asking this jury to conclude that these pictures, in and of themselves, show that [Casciato] has had ongoing use of methamphetamine, and I don't think a clinician would make that assessment. So I certainly don't think a layperson, you or I or the jury, should make that kind of assessment." (Vol. 3 at 382).

Applying an abuse of discretion standard, we find no error. To admit these photographs, LaPlatney necessarily must lay a proper foundation by showing that "the matter in question is what the proponent claims." Fed. R. Evid. 901; *see United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989) ("The condition precedent to the admission of real evidence is met by providing the proper foundation."). Simply asserting, in the absence of any supporting evidence, that the photographs evidenced drug use at a particular point in time is insufficient. Without an adequate foundation, the photographs were properly excluded. *See United States v. Hart*, 729 F.2d 662, 669 (10th Cir. 1984) ("[Q]uestions concerning the sufficiency of foundation evidence . . . are matters within the sound discretion of the trial court.").[1]

In sum, the exclusion of the photographs did not violate LaPlatney's constitutional right to present a defense.

### C. Jury Instruction on Witness Credibility

LaPlatney's third argument asserts the district court erred by failing to give a jury instruction regarding witness credibility. To combat what LaPlatney

---

[1] As with the first argument, LaPlatney failed to raise any Sixth Amendment argument below or plain error on appeal. Since we find no error, LaPlatney could not satisfy plain error review even if she had preserved this argument.

characterized as a series of untruthful witnesses, she proposed the following instruction:

> The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.
>
> For example, a witness who was using addictive drugs during the time he or she testified about may have an impaired memory concerning the events that occurred during that time. Also, a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because he or she wants to strike a good bargain with the Government.
>
> So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

(Vol. 1, Def.'s Proposed Jury Instructions). The court refused this instruction, ruling that phrasing the instruction as LaPlatney proposed would make the court "an advocate" for the defendant and that the proposed instruction "really is more argument than it is instructive on the law." (Vol. 4 at 620–21).

In lieu of LaPlatney's proposed instruction, the court tendered standard instructions concerning witness credibility. For example, Instruction No. 9 addressed the credibility of witness testimony generally:

> In making your assessment [of witness credibility] you should carefully scrutinize all of the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness, in your opinion, is worthy of belief. Consider each witness's intelligence, motive to falsify, state of mind, and appearance and manner while on the witness stand. Consider the

-8-

witness's ability to observe matters as to which he or she has testified
. . . .

Instruction No. 11, addressing Mills's testimony in particular as a potential

recipient of reduced sentencing, cautioned the jury:

> You have heard that the witness Mike Mills was a defendant and that Mr. Mills entered a plea of guilty to a crime. This evidence of Mr. Mills's plea of guilty is admitted for very limited purposes. Specifically, the evidence is admitted so that you may assess the credibility of this witness as part of your duty in assessing the credibility of each and every witness who will appear in this case . . . Under no circumstances should the evidence of Mr. Mills's [] guilty plea be used by you as evidence of the guilt of the defendant.

Instruction No. 12 similarly addressed the issue of witness self-interest:

> You, as jurors, must determine whether the testimony of a witness has been affected by self-interest. If you so infer, the testimony must be examined and weighed by the jury with greater care than the testimony of someone who is appearing in court without a personal interest in offering the testimony.

Finally, Instruction No. 13 addressed the potential effect of alcohol or drug

abuse upon witness credibility:

> The testimony of a drug or alcohol abuser must be examined and weighed by the jury with greater care than the testimony of a witness who does not abuse drugs or alcohol.

> The jury must determine whether the testimony of the drug or alcohol abuser has been affected by drug or alcohol use or the need for drugs or alcohol.

We review a district court's refusal to give a particular jury instruction for

abuse of discretion. *United States v. Serrata*, 425 F.3d 886, 898 (10th Cir. 2005).

In performing this review, we consider de novo the instructions in their entirety in order to determine whether they accurately convey the governing law and the applicable standards to the jury. *Id.*; *United States v. Buonocore*, 416 F.3d 1124, 1131–32 (10th Cir. 2005).

We conclude that the court's tendered instructions more than adequately conveyed the applicable standards to the jury and therefore the court did not err by rejecting the instruction proposed by LaPlatney. Instruction Nos. 9, 11, 12, and 13 provided the jury with an ample description of the law and applicable standards to consider witness testimony. Accordingly, the district court's refusal to tender LaPlatney's particular jury instruction was not an abuse of discretion.

### D. Cumulative Error

LaPlatney finally argues she was denied her due process right to a fundamentally fair trial through the combined effect of (1) the exclusion of the federal sentencing guidelines as a demonstrative aid; (2) the exclusion of Casciato's booking photographs; and (3) the refusal to tender her proposed jury instruction.

"As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily

prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941). When performing a cumulative-error analysis, only those matters which we determine to be error are relevant. Non-errors, by their very nature, are irrelevant to this analysis. *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990). Because we find no errors by the district court, we accordingly find no cumulative error.

## III. Conclusion

For the above stated reasons, we find that LaPlatney has not been denied her right to a fair trial, and we therefore AFFIRM.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge