**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 11, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JESUS MANUEL DIAZ,

      Defendant-Appellant.

No. 09-2090
(D.C. No. 07-CR-00701-LH)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, BALDOCK**, and **HARTZ**, Circuit Judges.

Defendant-Appellant Jesus Manuel Diaz was convicted by a jury of

possession with intent to distribute 1,000 kilograms or more of marijuana in

violation of 21 U.S.C. § 841(b)(1)(A). On appeal Diaz challenges his conviction

on five grounds alleging that: (1) the district court erred in denying his motion to

suppress evidence of the marijuana; (2) the evidence adduced at trial was

insufficient to support his conviction; (3) the district court improperly instructed

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

the jury; (4) the district court improperly admitted the testimony of two law enforcement officers; and (5) the district court committed three other evidentiary errors which cumulatively denied him the ability to present a defense. We have jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM Diaz's conviction.

## I.

Jesus Manuel Diaz is the owner-operator of a one rig trucking company known as JD Easyline. On March 19, 2007, Diaz drove his tractor-trailer eastbound through the Gallup, New Mexico, Port of Entry located on Interstate 40 near the Arizona border. The drive-up credentials booth was closed that morning so Diaz got out of his truck and entered the lobby at 9:40 a.m. in pursuit of the permits necessary to drive his tractor-trailer across New Mexico.

Once inside, Diaz encountered James Smid, a Motor Transportation Division officer with the New Mexico Department of Public Safety. Diaz provided Officer Smid with his commercial driver's license and the various other items necessary to complete the permit paperwork. According to the bill of lading and weight scale ticket Diaz presented to Officer Smid, Diaz's load consisted of 9,762 pounds of Dollar Store merchandise and the gross weight of his tractor-trailer was 56,760 pounds.

These weights concerned Officer Smid. Based on his experience, both as a commercial truck driver and as public safety officer, Smid knew that an empty tractor-trailer with fuel weighs between 32,000 and 33,000 pounds. Thus, he

2

believed that if Diaz's load were in fact 9,762 pounds, the gross weight of Diaz's tractor-trailer would be approximately 42,000 pounds. This left approximately 14,000 pounds unaccounted for by Diaz's paperwork. Smid was also confused by the fact that Diaz had chosen to "scale out" when he was well below the applicable weight limit.

At 9:45 a.m., with his interest piqued, Officer Smid informed Diaz that he was going to perform a Level Two Regulatory Inspection of his tractor-trailer. A Level Two Inspection is a process authorized by N.M. Stat. Ann. § 65-5-1 which allows a safety officer to ensure that a tractor-trailer is in compliance with all applicable laws and regulations by examining the vehicle and performing a more in-depth review of the driver's relevant paperwork.

Officer Smid began his Level Two Inspection of Diaz's tractor-trailer by reviewing Diaz's logbook. It showed that Diaz had not driven for the first several weeks of March and that Diaz had in fact been in California since January 19, 2007. Officer Smid felt that such a long stretch of downtime was strange for a sole proprietor trucker, particularly because although Diaz listed Baxley, Georgia as his home, he had spent the downtime in California. Smid asked Diaz about this and Diaz claimed that he had been sick with the flu in California for the entire two months.

Officer Smid then began to question Diaz about the weight discrepancies indicated by his paperwork. Diaz attempted to explain the unaccounted weight by

telling Officer Smid that sometimes shippers put more on to a trailer than is indicated in the bill of lading. Officer Smid found this explanation odd given that in his experience legitimate shippers only ship what is listed in the bill of lading.

During his review of Diaz's paperwork, Officer Smid also noticed a marked change in Diaz's demeanor. Diaz began lowering his head, rubbing his lips with his hand, and scratching his neck. This was of note to Smid because Diaz had not exhibited any of this behavior during the initial permitting process. At this time Diaz also offered a second story regarding his downtime in California, this time informing Smid that he had spent some of the time in Mexico visiting family and friends.

With the document review portion of the Level Two Inspection complete, Officer Smid instructed Diaz to pull his tractor-trailer into an inspection bay so that he could inspect the vehicle itself. As Officer Smid inspected the outside of the vehicle he first noted a lock and seal on the trailer's doors. Officer Smid felt that this was unusual because based on his experience, a relatively small load of Dollar Store merchandise would not be locked and sealed.

Officer Smid then began to inspect the cab of the tractor—a routine part of a Level Two Inspection. While inside Smid noticed that Diaz did not have a citizen's band or CB radio, which he felt was unusual for a commercial trucker. Smid asked Diaz why he did not have a CB radio and Diaz told Smid he had sold it because he needed money. Officer Smid also discovered four cell phones in

4

Diaz's cab. Smid thought this was significant because in the over 2,500 inspections he had conducted, he had discovered multiple cell phones in only about thirty instances, nearly all of which eventually resulted in the discovery of contraband as well. Officer Smid also felt that Diaz's paying for four cell phones was not consistent with his statement that he sold his CB radio because he needed the money.

Officer Smid then moved on to check the load in Diaz's trailer. Diaz had informed Smid that the shipper had sealed and locked the load. Again, Smid felt that it was unusual that a load of this nature would have been sealed and locked. Upon further examination Smid was also concerned by the fact that the seal on the trailer's door was a commercially available seal, not unique to the shipper. In Smid's experience this was not a typical practice.

When the doors of the trailer swung open, Officer Smid detected a strong odor of air freshener. Smid thought this was strange because the bill of lading did not indicate that Diaz was transporting any air fresheners. Further, in Officer Smid's experience, drug traffickers had used air fresheners in an attempt to conceal the contraband they were transporting.

Officer Smid then viewed the contents of the trailer. It was packed very tightly with pallets of boxes lining its entire length. In the middle were large bundles of clear plastic shrinkwrap. Officer Smid noticed that the boxes toward the nose of the trailer had a large amount of dust on them while the boxes toward

5

the rear of the trailer, or near its doors, did not. In Officer Smid's experience this was consistent with the use of a "cover load," or a group of boxes that remain in a trailer over the course of multiple drug runs, each time aiding in the driver's attempt to appear legitimate. During this time Officer Smid also looked back at Diaz on at least one occasion, but Diaz would not look at Officer Smid.

Confident now in his belief that Diaz's trailer contained contraband, Officer Smid terminated his Level Two Inspection at 10:17 a.m. and asked another officer to call Officer Hermillo Lucero, a K-9 officer. Although it is unclear whether Smid returned Diaz's paperwork to him at this time, Smid did ask Diaz if he could ask him a few more questions, and Diaz agreed. Officer Smid asked Diaz if there was any cocaine, heroin, or methamphetamine in his truck and Diaz promptly answered "no" to each of these questions. When Smid asked Diaz if there was any marijuana in his trailer, however, Diaz hesitated, turned away from Smid, and laughed nervously before saying "no" again.

Officer Smid then asked Diaz if he could perform a more thorough search of the tractor-trailer and Diaz verbally agreed. Smid then produced a consent form—in Spanish because Diaz indicated he was more fluent in that language—which was read to Diaz. Diaz signed this consent form at 10:30 a.m. and Officer Smid began his subsequent search at 10:35 a.m.

At this point Officer Dave Halona arrived and stayed with Diaz while Smid began searching the cab of the tractor. As he entered the cab, Diaz informed

6

Smid that there was $1,500 in cash in a bag in the cab. Diaz said that he had received the cash as an advance for costs from the broker who got him the job. Based on his experience, Officer Smid felt that this was an unusual practice. Further, he felt that it was odd that the cash was is small denominations. Officer Smid's search of the cab ended at approximately 10:55 a.m.

Officer Smid then moved back to the trailer. The smell of air freshener became stronger as he moved toward the middle of the trailer. He proceeded to open one of the boxes and discovered a seat cushion in a state of disrepair that indicated to Smid that it was not legitimate merchandise. He continued to diligently move and search the boxes by himself for approximately an hour. Then, at 11:55 a.m., Smid called Officer Lucero to see how long it would be before he arrived with the canine unit. Officer Lucero said he would be there shortly.

Smid continued to search the trailer without taking a break until Officer Lucero arrived at 12:15 p.m. Shortly after he arrived, Officer Lucero ran his dog around the outside of Diaz's trailer and it alerted on the front left corner. The dog did not, however, alert inside the trailer. Nonetheless, Officers Smid and Lucero decided to conduct a further hand search of the trailer.

As they moved several more of the boxes in the trailer the officers discovered a plywood tunnel that had been built into the trailer. Officer Smid crawled into the tunnel and discovered a large plastic bag. He cut the package

7

open and discovered marijuana. The officers then arrested Diaz at 12:45 p.m. before finishing their search which eventually produced 230 bundles of marijuana weighing more than 3,300 pounds.

At Diaz's trial, the following additional facts were adduced. First, a laptop computer and printer were discovered in the cab of Diaz's tractor and a computer forensics expert testified that a program used to create bills of lading had been deleted from the computer the day before Diaz was arrested. Also, it was discovered that Diaz already had a bill of lading for a return trip from Georgia which was identical in every way to the one he presented to Officer Smid in Gallup except that the cargo was listed in a different order. And a Dollar Store manager from California, Homer Gonong, testified that the Dollar Store does not ship in bulk, a single company services the company's southern California trucking needs, the contact listed on Diaz's bill of lading does not work for the Dollar Store, and the type of bill of lading that Diaz presented was not one that the Dollar Store used.

Further, a receipt for shrinkwrap was discovered in Diaz's cab, the seal on the trailer's door was found to be within the sequence of seals found in Diaz's cab, and it was determined that all four of the cell phones found in Diaz's cab were "throw away" phones, only one of which had any connection to Diaz or his company. Finally, Drug Enforcement Agency Agent Kevin Garver testified that many of Diaz's practices were consistent with drug trafficking operations that he

8

had previously investigated.

On March 20, 2007, a criminal complaint was filed in the United States District Court for the District of New Mexico charging Diaz with the possession of over 1,000 kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(A). After a jury trial, Diaz was convicted and this timely appeal followed.

**II.**

*A.    Motion to Suppress*

Prior to trial, Diaz filed a Motion to Suppress Evidence in which he requested that the district court suppress the evidence of the marijuana seized from his tractor-trailer. After holding an evidentiary hearing, the district court denied Diaz's motion. The district court concluded that Officer Smid's initial Level Two Inspection of Diaz's tractor-trailer was constitutional under the regulatory search exception to the Fourth Amendment's warrant requirement, see United States v. Gwathney, 465 F.3d 1133, 1138-40 (10th Cir. 2006) (holding that New Mexico's inspection system is constitutional under the regulatory search exception insofar as it allows an officer to enter a trailer to inspect its cargo). The district court also concluded that the subsequent search performed by Officers Smid and Lucero was constitutional, offering three independent bases for this holding: (1) that during the course of his Level Two Inspection Officer Smid developed probable cause to believe that Diaz's tractor-trailer contained

9

contraband; (2) that during the course of his Level Two Inspection Officer Smid developed reasonable suspicion to believe that Diaz's tractor-trailer contained contraband; and (3) that Diaz voluntarily consented to the subsequent search.

On appeal, Diaz does not challenge the district court's conclusion regarding the constitutionality of Officer Smid's Level Two Inspection, but does argue that the district court erred in upholding the subsequent search of the cab and trailer. We are free to affirm the district court's decision on any grounds, see United States v. Dennison, 410 F.3d 1203, 1209 n.1 (10th Cir. 2005), and begin our review with the district court's conclusion that Officer Smid had probable cause to conduct the challenged search.

Probable cause under the automobile exception to the Fourth Amendment's warrant requirement exists if, given the totality of the circumstances, there is a fair probability that the vehicle contains contraband or evidence. United States v. Vasquez-Castillo, 258 F.3d 1207, 1212 (10th Cir. 2001). We review the district court's probable cause ruling de novo, United States v. Rosborough, 366 F.3d 1145, 1152 (10th Cir. 2004), viewing the evidence in the light most favorable to the government and accepting the factual findings of the district court unless they are clearly erroneous, see United States v. Grimmett, 439 F.3d 1263, 1268 (10th Cir. 2006).

The district court relied on the following fifteen factual findings in concluding that Officer Smid had  probable cause to conduct a further search after

10

he had completed his regulatory inspection:

> (1) the inconsistent weights suggested Diaz was carrying more load than was listed on the bill of lading; (2) Diaz's log book showed considerable down time away from home which was odd for an independent trucker; (3) Diaz offered inconsistent stories regarding his illness and/or trip to Mexico; (4) Diaz was increasingly nervous from the initial permit process through the inspection; (5) Diaz's explanation for why he scaled out was inconsistent with the use of legitimate shippers; (6) Diaz's possession of four cell phones; (7) Diaz's lack of a CB radio was suspicious; (8) Diaz's claim that he sold the CB radio because he needed money was inconsistent with the fact that he had four cell phones to pay for; (9) the use of a lock and seal on the trailer was unusual given the weight and nature of the load; (10) the seal on the trailer was not unique to the shipper, even though Diaz claimed the shipper sealed the trailer; (11) the large amount of dust on the boxes was consistent with the use of a cover load; (12) the strong odor of air freshener was consistent with an attempt to mask the odor of drugs; (13) Diaz's hesitation and nervous laughter when asked if he had marijuana in the truck indicated criminal activity; (14) Diaz told Smid he had $1,500 in cash in a bag in the tractor; and (15) the packages in the trailer contained seat cushions in terrible condition, indicating they were part of a cover load.

Aplt. App. at 297-98, 302.

Diaz contends that several of these factual findings are clearly erroneous because they "were based on nothing more than Officer Smid's bare assertions which lacked any factual basis." Aplt. Op. Br. at 24. Specifically, Diaz argues that there was no evidence to confirm any alleged weight discrepancy Smid found between the bill of lading and the tractor-trailer itself, that his logbook demonstrated that his statements regarding his downtime were not inconsistent, that there was no documented evidence of dust on boxes or air fresheners in the trailer, and that Officer Halona's testimony indicated that Diaz was calm, not

11

nervous, throughout the encounter. Diaz further argues that it was improper for the district court to rely solely on Officer Smid's testimony to conclude that the details of his method of operation—his four cell phones, the use of a commercially available seal, his lack of a CB radio, etc.—were consistent with the practices of a drug trafficker.

Diaz's arguments are not compelling. First, as we have previously noted, "[t]he credibility of witnesses, the weight to be given to evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court," Rosborough, 366 F.3d at 1148 (quoting United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999)), and Diaz provided no evidence or direct testimony to contradict Officer Smid at the suppression hearing. Moreover, we have cautioned that "a court should accord deference to an officer's ability to distinguish between innocent and suspicious actions." United States v. Gandara-Salinas, 327 F.3d 1127, 1130 (10th Cir. 2003). Therefore, we cannot conclude that the district court's factual findings were clearly erroneous, even if they were based solely on the testimony of Officer Smid.

Thus, although our review of the record causes us to conclude that the events which relate to the district court's final two factual findings occurred after Officer Smid's Level Two Inspection, we accept, and in turn rely upon the remaining findings to conclude that by the end of his Level Two Inspection, Officer Smid had probable cause to believe that Diaz's tractor-trailer contained

12

contraband. See Gwathney, 465 F.3d at 1137-40 (holding that a trucker's suspicious travel schedule, the presence of non-conforming packages in his trailer, a receipt indicating he had paid almost $14,000 in cash for repairs, and footprints on boxes indicating that the non-conforming packages had been placed in the trailer last, all contributed to a finding of probable cause); United States v. Anderson, 114 F.3d 1059, 1066 (10th Cir. 1997) (holding that conflicting versions of travel itinerary, the presence of a communication device consistent with drug trafficking and the scent of air freshener all contributed to a finding of probable cause). In light of this conclusion we need not address the district court's alternative findings and conclusions which support its conclusion that reasonable suspicion and consent would also serve as bases for upholding the challenged search. We conclude that the district court was correct in denying Diaz's motion to suppress.

B. *Sufficiency of the Evidence*

Diaz next argues that the evidence presented at his trial was insufficient to support his conviction. We review the sufficiency of the evidence to support a criminal conviction de novo. United States v. Triana, 477 F.3d 1189, 1194 (10th Cir. 2007). In so doing, we "ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (citation and alteration

13

omitted).

To support Diaz's conviction for possession with intent to distribute,  the government must prove beyond a reasonable doubt: (1) that Diaz knowingly possessed the marijuana; and (2) that Diaz possessed the marijuana with the specific intent to distribute it.  Id.  Possession may, however, be constructive. That is, possession may be found if the defendant knowingly had ownership, dominion, or control over the contraband and the premises where it was found. United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996).  However, "when the contraband may be attributed to more than one individual, constructive possession requires some nexus, link, or other connection between the defendant and the contraband."  Id.

According to Diaz, the marijuana in his trailer could reasonably be attributed either to him or to the Dollar Store and because there was no nexus or link which connected him to the contraband, the evidence was insufficient to support his conviction based on constructive possession.  Even we assume, *arguendo*, that the marijuana found in the trailer could reasonably be attributed to the Dollar Store,  Diaz's argument is unavailing because the evidence adduced at trial did establish a nexus or link between Diaz and the contraband.

Specifically, Diaz was the sole occupant of the truck, his mode of operation and his downtime in California supported an inference of drug trafficking, his computer was shown to be capable of creating bills of lading identical to the one

14

he presented to Officer Smid, he had a receipt for shrinkwrap which was used to package the marijuana, and the value of the drugs made it unlikely that they would be shipped without the driver's knowledge. In sum, the evidence was sufficient to support's Diaz's conviction based on a theory of constructive possession.

*C.  Jury Instruction*

Diaz next argues that the district court erred in giving the jury the following instruction:

> With respect to the question of whether or not a defendant knew that the controlled substance was present, you may, but are not required to, infer that the driver and sole occupant of a tractor trailer rig has knowledge of the controlled substance within it. This inference does not relieve the government of its obligation to prove all the elements of the offense beyond a reasonable doubt.

Aplt. App. at 674. Diaz alleges that this permissive inference instruction was not warranted by the evidence and as such it relieved the government of its burden to prove every element of the crime beyond a reasonable doubt. We review the trial court's decision to give a particular jury instruction for an abuse of discretion, but "consider the instructions as a whole de novo to determine whether they accurately informed the jury as to the governing law." Gwathney, 465 F.3d at 1142.

The instruction that Diaz challenges is the same instruction the defendant challenged in Gwathney. See id. at 1138. In rejecting Gwathney's challenge to

15

the instruction, we noted that "[a] permissive inference instruction does not violate a defendant's Sixth Amendment rights provided there is a rational connection between the facts proved by the prosecution and the ultimate fact presumed, and the inferred fact is more likely than not to flow from the proven facts." Id. at 1143. We went on to hold that the district court had not abused its discretion in giving the permissible inference instruction because the evidence strongly supported an inference that Gwathney knew of the marijuana in his trailer. Id. Specifically, Gwathney was the sole operator of the trailer containing the drugs, the load had not been sealed by the packers which meant Gwathney could have accessed it, and the high value of the marijuana made it unlikely that it would be shipped without the driver's knowledge. Id.

Diaz distinguishes the facts of his case from those presented in Gwathney, pointing out that he did not own the trailer he was transporting, he was operating pursuant to a "hook and drop" arrangement, and the trailer he was transporting was locked and sealed by the shipper. Diaz claims that these factual differences precluded any inference that he had knowledge of the trailer's contents. Even assuming, *arguendo*, that the facts that Diaz relies on are meaningfully distinguishable from Gwathney, his argument is nonetheless unavailing because there remains a host of evidence to support the inference that Diaz knew about the drugs in his trailer. This evidence includes Diaz's sole operation of the truck, the high value of the drugs, the box of seals in the tractor which were of the same

16

make as the seal on the trailer, the bills of lading presented which were the same as those Diaz's computer could generate, the receipt for shrinkwrap in the tractor and the various other suspicious details of Diaz's mode of operation.  Given the magnitude of this remaining evidence, the district court did not abuse its discretion in giving the jury the permissive inference instruction.

D.      *Expert Testimony*

Diaz next contends that the district court erred in allowing Officer Smid and Agent Garver to testify as expert witnesses regarding the trucking industry and/or common drug trafficking practices.  Specifically, Diaz alleges that the district court erred in allowing Smid and Garver to offer expert testimony without first ensuring that there was a reliable basis for their expertise.

Before trial, Diaz's counsel filed a motion in limine on these grounds, but the district court chose to wait until the testimony was offered and objected to before making its ruling.  During the course of the trial, however, Diaz's counsel objected on these grounds only once toward the end of Officer Smid's re-direct testimony and the district court correctly overruled Diaz's objection, noting that the challenged testimony was not expert in nature.  Thus, because any objections Diaz made were untimely, he has waived this issue and we will review the district court's admission of this testimony only for plain error.  See Macsenti v. Becker, 237 F.3d 1223, 1230-34 (10th Cir. 2001) (holding that objections made to expert testimony after it was given were untimely and therefore reviewing the admission

17

of the testimony only for plain error); <u>United States v. Nichols</u>, 169 F.3d 1255, 1264 (10th Cir. 1999) (noting that unless the trial court rules upon a pretrial motion in limine without equivocation, the motion will not preserve an objection that is not renewed at the time the evidence is introduced).

Federal Rule of Evidence 702 requires trial courts to assess the reliability of expert testimony which is based on scientific, technical, or "other specialized" knowledge before admitting it. <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 589 (1993); <u>see also</u> <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 141 (1999). Thus, if expert testimony is objected to at trial "the district court is required to make specific, on-the-record findings that the testimony is reliable under <u>Daubert</u>." <u>United States v. Roach</u>, 582 F.3d 1192, 1207 (10th Cir. 2009).

Much of the testimony of Officer Smid and Agent Garver was not, however, expert in nature because it was not based upon scientific, technical, or "other specialized" knowledge. Moreover, to the extent that either of the individuals' testimony was expert in nature, not only did the absence of an objection excuse the district court from its duty to make "explicit on-the-record rulings" regarding reliability, <u>see</u> <u>Goebel v. Denver and Rio Grande W. R.R. Co.</u>, 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) ("When no objection is raised [to expert testimony], district courts are not required to make 'explicit on-the-record rulings . . . .'"), but the testimony's reliability can also be safely inferred from the

18

breadth of each individuals' training and experience.[1]  In sum, the district court

did not err in allowing the testimony of either Officer Smid or Agent Garver.

E.     *Evidentiary Errors*

Diaz also argues that the district court denied him his constitutional right to

present a defense when it refused to allow his handwriting expert to examine the

original consent form, refused to permit the telephonic testimony of his former

employer and excluded evidence that Diaz lacked a motive to commit the crime

for which he was charged.  We review the district court's decision to exclude

evidence for an abuse of discretion, but review de novo the question of whether a

constitutional violation has occurred.  United States v. Solomon, 399 F.3d 1231,

1239 (10th Cir. 2005).

A defendant is afforded the constitutional right to present a defense by the

due process clauses of both the Fifth and Fourteenth Amendments and by the

Sixth Amendment's right to compulsory process.  Id.  This right is, however, not

without limits and thus, in presenting evidence a defendant "must comply with the

established rules of evidence and procedure to assure both fairness and reliability

in the ascertainment of guilt or innocence."  Id. (citation and alteration omitted).

---

[1] Officer Smid testified that he has possessed a commercial driver's license since 1994, he is a certified motor carrier inspector who has attended a two-week training course on conducting inspections, and he has conducted approximately 2,500 commercial vehicle inspections, approximately fifty of which had resulted in the seizure of contraband.  Agent Garver testified that in his seventeen years as a DEA special agent he has been involved in several hundred drug investigations during which he has learned about various drug trafficking practices.

19

"While the trial court may not apply a rule of evidence mechanistically to defeat the ends of justice," in order to demonstrate that his constitutional rights have been violated a defendant "must show that the exclusion of evidence rendered his trial fundamentally unfair . . . ." Id. (quotations omitted).

### 1. Handwriting Expert

Shortly before trial, Diaz filed a Motion to Inspect the Consent to Search Form in which he requested that the district court direct the government to allow a handwriting expert to inspect the original consent form at his offices in nearby Santa Fe, New Mexico. The district court did not hold an evidentiary hearing on the matter, but denied Diaz's motion in a written order in which it noted that the government had already complied with Federal Rule of Criminal Procedure 16(a)(1)(E) by allowing Diaz to inspect and copy the original consent form and found that denying access to the original form was not prejudicial to Diaz. Diaz now claims that the district court abused its discretion both in its decision on the merits and in issuing its order without first holding an evidentiary hearing.

Diaz's argument is unavailing. Not only did Diaz fail to request an evidentiary hearing in his motion, but he has also subsequently failed to identify what additional evidence would have been presented at such a hearing that was not already set forth in his motion. Further, Rule 16(a)(1)(E) makes no mention of a defendant's right to take custody of a document, but instead requires only that the government permit the defendant "to inspect and to copy" documents, a

20

step that the government in this case had already taken. Fed. R. Crim. P. 16(a)(1)(E). Thus, the district court did not abuse its discretion in denying Diaz's motion or in doing so without first holding an evidentiary hearing.

2.    Telephonic Testimony

Less than a week before his trial commenced, Diaz filed a motion requesting that the district court permit his former employer to testify telephonically regarding the common practices of the trucking industry. The district court denied this motion in a written order referencing the reasons set forth at a hearing on the motion, namely that Federal Rule of Criminal Procedure 26 requires all witnesses in a criminal trial to testify in open court unless otherwise provided by statute or by rule. On appeal, Diaz contends that the district court erred in issuing its order both because it failed to acknowledge its discretion to permit telephonic testimony, and because it failed to exercise that discretion.

Diaz's argument is without merit. The language of Rule 26 unequivocally states that all witnesses in a criminal trial must testify in open court unless otherwise provided by statute or by rules adopted under 28 U.S.C. §§ 2072-2077. See Fed. R. Crim. P. 26. Diaz has failed to point to any statute or rule which provides such an exception which would apply in this case. Thus, the district court did not abuse its discretion in declining to conclude that it had discretion to permit telephonic testimony, and/or in declining to exercise such discretion.

21

3. Motive Testimony

In his case-in-chief, Diaz attempted to present the testimony of Genaro Legorreta, an attorney who at the time was representing Diaz in a California worker's compensation proceeding. Diaz hoped that evidence of his possible worker's compensation recovery would establish that he did not have a financial motive to traffic in marijuana. As Legorreta began to explain his representation of Diaz, however, the district court cut off the testimony, ruling that it was irrelevant. Diaz contends that the district court abused its discretion in excluding Legorreta's testimony because he claims that the absence of any plausible motive for his engaging in criminal conduct is highly relevant.

Once again, Diaz's argument is unpersuasive. Even if we accept Diaz's proposition that absence of a financial motive is relevant, given the potential jury confusion that an in-depth discussion of a worker's compensation proceeding might cause, the district court had an adequate basis for excluding Legorreta's testimony under Federal Rule of Evidence 403. In fact, the district court mentioned that it believed that if the testimony were allowed, "[t]he jury [was] going to think this is a civil case." Aplt. App. at 585. As "we are required to give the trial court 'substantial deference' in Rule 403 rulings," United States v. Shumway, 112 F.3d 1413, 1422 (10th Cir. 1997) (quotation and citation omitted), we conclude that the district court did not abuse its discretion in excluding Legorreta's testimony.

22

4.    Cumulation

Finally, Diaz contends that even if each of the district court's evidentiary rulings were only harmless error, viewed cumulatively they infringed upon his constitutional right to present a defense.  Diaz's argument fails because, as the foregoing discussion demonstrates, the district court did not err in any of its evidentiary rulings.

## III.

For the reasons discussed above, we AFFIRM Diaz's conviction under 21 U.S.C. § 841(b)(1)(A).

Entered for the Court

Mary Beck Briscoe
Circuit Judge

23