**Opinion issued April 14, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-24-00878-CR**
**01-24-00879-CR**
**01-24-00880-CR**
**01-24-00881-CR**

———————————

**JUSTIN WAYNE ORTEGO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 253rd District Court**
**Chambers County, Texas**
**Trial Court Cases 22DCR0030, 22DCR0031, 22DCR0032, and 22DCR0033**

---

## O P I N I O N

The appellant was indicted for seven charges of sexual abuse of his minor daughter. A jury convicted him of continuous sexual abuse of a young child (which subsumed three charges related to touching her genitals) and three charges of

indecency by contact. The jury assessed punishment at the maximum periods of confinement for each offense: Life for the continuous charge and twenty years for each of the indecency charges.

The appellant raises four points of error. Two points relate to the appellant's claim that his wife obtained evidence from his phone unlawfully. The other two points relate to the trial court's denial of his request to have two witnesses testify via Zoom.

We affirm.

## The Offenses

The appellant and Jennifer[1] had an on-and-off relationship for over two decades. The couple had four daughters. In 2012, one of the older daughters, then aged 12, made an outcry that the appellant had tried to watch her shower. The couple divorced. They lived separately for about two years, but then resumed cohabitating.

In December 2021, Jennifer looked through the appellant's phone and found sexual messages between him and their youngest daughter, Jane Doe. In one conversation the appellant asked Jane Doe to "get naked, wrap yourself in a blanket, and come up here quietly so we can get it done. . . . Or get naked and stay on the couch and I will come down there." Jennifer confronted the appellant with these

---

[1]     The record uses the name "Jane Doe" for the complainant. To protect Jane Doe's privacy, we refer to her mother by a pseudonym, Jennifer.

2

messages and asked what he had done and how many times he did it. He replied, nonchalantly, "If you know I did it, what does it matter how many times I did it?"

Jane Doe testified she was molested on many occasions when she was 12-13 years old in 2021. She said the appellant would touch her whenever he was home from work, which was about every other week. She said that on multiple occasions the appellant showed her pornography, touched her both over and under her clothing, took her clothing off, and kissed her breasts and vaginal area.

## Points One and Three

The appellant moved to suppress the evidence Jennifer obtained from his cell phone. The appellant argued that Jennifer's search of his phone was a crime, thus any evidence she obtained was inadmissible under the Fourth Amendment and Texas's statutory exclusionary rule, Code of Criminal Procedure Article 38.23. The trial court held a pretrial hearing and denied the motion. In his first point of error, the appellant argues the trial court erred by denying his motion to suppress.

The appellant asked the trial court to instruct the jury, under Article 38.23, to disregard any evidence for which it had a reasonable doubt as to whether it was obtained legally. The trial court denied this request. In his third point of error, the appellant argues that ruling was error.

## I.      Factual Background

### A.      The Suppression Hearing

The appellant's pretrial motion to suppress alleged that Jennifer's search of his phone was illegal and that admitting any evidence she obtained would violate the Fourth Amendment and Article 38.23. The State filed a brief in opposition, arguing that the authority the appellant relied on—primarily *State v. Granville*, 423 S.W.3d 399 (Tex. Crim. App. 2014)—related to searches conducted by police. The State argued that Jennifer was acting as a private individual when she searched the appellant's phone, thus *Granville* and similar cases were off point.

At the suppression hearing, Jennifer testified about her relationship with the appellant. She said that a couple of years after their divorce he wanted to get back together. She did not trust the appellant so she made him agree to certain conditions before he could move back in with the family. One condition was that she have access to his phone.

The State admitted into evidence a handwritten document titled, "A Commitment to You." It's a numbered list of eleven commitments. Commitment 8 is: "To let u if u have any concerns to look at my phone for any reasons [sic.]." Jennifer testified the appellant gave her this document "one of the times [they] got back together." She didn't remember exactly when he wrote it, but she said it was 2018 or 2019. She said that because of the trust issues she had with the appellant,

her ability to look through his phone was a necessary condition of their relationship. The appellant stipulated it was his handwriting. Jennifer testified that the appellant never stopped her from looking at his phone and did not hide his passwords from her.

As to the discovery of the text messages, Jennifer said that before she looked through the appellant's phone "something seemed off." At one point she saw the appellant and Jane Doe in the pool and "he was real close to her." Jennifer also said she routinely checked the appellant's phone to monitor his habits for cocaine, pornography, and talking with other women. She testified that one night when the appellant was showering she looked through his phone and saw in the trash folder sexual conversations between the appellant and Jane Doe. When the appellant got out of the shower, Jennifer asked if he had touched Jane Doe and he said he had. Jennifer took screenshots of the conversations and texted them to her own phone. She kicked the appellant out of the house. When he left, an hour or two later, she gave him his phone back.

Defense counsel argued to the trial court that Jennifer's search of the appellant's phone violated the law in several ways. First, it was an unconstitutional search. Defense counsel argued that Jennifer's search of the phone exceeded the scope of the appellant's consent because the texts were in the "trash" folder and the appellant was in the shower at the time of the search. Second, defense counsel argued

5

that Jennifer's taking the phone and not giving it back until the appellant left meant the evidence was obtained through a theft. Third, defense counsel argued Jennifer violated Penal Code Section 33.02, Breach of Computer Security, because she accessed his phone without his effective consent.

The prosecutor argued that Article 38.23 did not make the constitutional restrictions on law enforcement applicable to private citizens, so suppression was required only if Jennifer had obtained the evidence in violation of a criminal law. The prosecutor also argued that Jennifer did not commit Breach of Computer Security because she had consent to search the appellant's phone: "He could have told her, 'Don't look in the trash on my phone,' but he didn't."

The trial court found it was "uncontroverted that [Jennifer] had consent to look at his phone." It also found that no law enforcement agency was involved with her initial search. It denied the appellant's motion to suppress.

## B.    The Supplemental Suppression Hearing

About nine months after the suppression hearing the appellant filed a supplemental motion to suppress based on a newly released opinion, *State v. Holloway*, 714 S.W.3d 153 (Tex. App.—Austin 2024, no pet.). In *Holloway*, the defendant explicitly forbade his wife from looking through his phone, so she waited until he was asleep and used his thumb to unlock it. *Id.* at 154–55. She found a video of the defendant being sexually inappropriate with the couple's daughter. *Id.* at 155.

6

The trial court held that the wife had committed Breach of Computer Security and suppressed her testimony about what she saw on the phone. *Id.* The prosecution appealed and the Third Court, applying the deferential review that goes with rulings on motions to suppress, affirmed. *Id.* at 158–59.

At the hearing on the appellant's supplemental motion, defense counsel argued that Jennifer's waiting until the appellant was in the shower before searching his phone was analogous to Holloway's wife waiting until he was asleep to use his thumb to unlock his phone. The prosecutor argued that *Holloway* was not controlling because Jennifer had consent to search the appellant's phone. The trial court agreed with the State. It noted its prior finding that Jennifer had consent, held that fact sufficiently distinguished this case from *Holloway*, and overruled the appellant's supplemental motion.

### C.    Trial Testimony

Jennifer's trial testimony about finding the text messages largely mirrored her testimony at the pretrial hearing. She testified she had permission to look at the appellant's phone, and the State admitted the "Commitment to You" letter into evidence. The trial court admitted the screenshots of the text conversations, subject to the appellant's pretrial objections.

At the charge conference, defense counsel asked that the jury being instructed to disregard any evidence it believed Jennifer obtained through the commission of

7

"theft, tampering [with evidence], breach of computer security, and violations of [Code of Criminal Procedure] Article 1.06[2], the Fourth Amendment, and Article 1, section 9 [of the Texas Constitution][3]." The trial court denied this request.

## II. Legal Background

Evidence may not be admitted at trial over objection if it was obtained in violation of the constitution or laws of the State of Texas or the federal government. TEX. CODE CRIM. PROC. art. 38.23(a). If the evidence was obtained by a police officer or other government official, it is inadmissible if it was obtained in violation of a constitutional provision, such as the Fourth Amendment's prohibition on unreasonable warrantless searches and seizures. But because constitutional provisions regarding searches do not limit the conduct of individuals acting in a private capacity, evidence obtained by a private individual is inadmissible under Article 38.23 only if it was obtained in violation of a criminal law. *State v. Ruiz*, 577 S.W.3d 543, 546 (Tex. Crim. App. 2019) ("The Constitution is a restraint on government. Other laws restrain individuals."); *Rosales v. State*, No. --- S.W.3d ---,

---

2  Article 1.06 states: "The people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches. No warrant to search any place or to seize any person or thing shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation."

3  Article 1, Section 9 of the Texas Constitution is practically identical to Article 1.06: "The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

No. 01-23-00876-CR, 2025 WL 3275147, at \*4 (Tex. App.—Houston [1st Dist.] Nov. 25, 2025, pet. filed).

We review a trial court's ruling on a motion to suppress under a familiar bifurcated standard. We give almost total deference to the trial court's findings of fact, explicit and implicit, that are supported by the record. *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997). We afford the same deference to the trial court's application of the law to facts if the resolution of those ultimate questions turns on an evaluation of credibility. *Id*. at 89. We review the trial court's legal determinations de novo only if they do not turn on credibility. *Id*. If the trial court's ruling is reasonably supported by the record and is correct under any applicable theory of law, we must uphold the ruling. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

If the trial court denies a motion to suppress but, during trial, "the legal evidence raises an issue" that the challenged evidence was obtained in violation of law, at the defendant's request the jury should be instructed to disregard any evidence it "believes, or has a reasonable doubt … was obtained" in violation of law. TEX. CODE CRIM. PROC. art. 38.23. Before such an instruction becomes law applicable to the case, a defendant must show three prerequisites:

(1) The evidence heard by the jury must raise an issue of fact;
(2) The evidence on that fact must be affirmatively contested; and

(3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). The possibility that the jury might disbelieve certain evidence is not enough to create a question of material fact; there must be an actual conflict in the evidence to justify a 38.23 instruction. *Shpikula v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

## III. Analysis for Point One

On appeal, the appellant claims the trial court abused its discretion by denying his motion to suppress. He claims the evidence showed Jennifer violated the Fourth Amendment, Article 1 Section 9 of the Texas Constitution, and Article 1.06 of the Code of Criminal Procedure. He also claims the evidence was obtained through Jennifer's commission of breach of computer security and theft.

### A. Jennifer did not violate the Fourth Amendment.

Much of the appellant's point is based on his claim that Article 38.23 makes the restrictions on government action applicable to private individuals. The appellant argues consent using Fourth Amendment case law regarding police conduct.

In response, the State points out these authorities are off point because Jennifer conducted the search as a private individual acting in a private capacity. We agree with the State. The Court of Criminal Appeals addressed this argument directly: "We disavow the idea that Article 38.23 extends the Fourth Amendment to

10

private citizens acting in a private capacity. We reaffirm that the Fourth Amendment is a restraint on government and that it does not apply to private individuals who are acting as such." *Ruiz*, 577 S.W.3d at 547.

The appellant also claims Jennifer violated Article I, Section 9 of the Texas Constitution and Code of Criminal Procedure Article 1.06. But both in the trial court and on appeal the appellant has relied on Fourth Amendment cases and has not discussed the Texas Constitution or Article 1.06 on their own terms. The appellant forfeited any argument that these state laws offer greater or different protections than the Fourth Amendment by not raising a specific argument in the trial court. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (holding that defendant failed to preserve claim that state constitution offered more protection than federal constitution by not explaining argument in trial court); TEX. R. APP. P. 33.1(a)(1)(A) (before raising complaint on appeal, complaining party must have made trial objection that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint . . . .").

**B.      Evidence supports the trial court's finding that Jennifer did not commit breach of computer security because she had the appellant's consent to search his phone.**

The appellant next argues that Jennifer violated Penal Code Section 33.02, "Breach of Computer Security," by searching his phone. As applied here, that

section makes it an offense to "knowingly access[] a computer, computer network, or computer system without the effective consent of the owner." TEX. PENAL CODE § 33.02(a).

But the trial court found that Jennifer had consent to search the appellant's phone, and the record supports that finding. The appellant presented no evidence that controverted Jennifer's testimony, or the appellant's own handwritten letter stating that Jennifer had permission to search his phone.

On appeal, the appellant claims the circumstances of the search show Jennifer exceeded the bounds of his consent. The appellant notes that Jennifer searched his phone while he was in the shower, and the text messages were found in the "trash" folder of his phone. Even assuming those circumstances created an inference that Jennifer's search somehow went beyond what the appellant consented to, the trial court was the finder of fact, and it was not obliged to credit this inference in the face of clear evidence of consent. The trial court's finding of consent was based on credibility determinations, to which we give great deference. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).

As he did in the trial court, the appellant directs us to the Third Court's opinion in *Holloway*. As the State notes in its brief, "the facts in that case are . . . distinct from the facts in this case in critical ways." Most importantly, in *Holloway* there was testimony that the husband had explicitly denied the wife consent to search his

phone. 714 S.W.3d at 154–55. There was no such testimony here. Instead, as the finder of fact, the trial court credited the uncontradicted testimony that Jennifer had consent to search the appellant's phone. *Holloway* is distinguishable on the facts alone.

**C.    The evidence supports the trial court's finding that Jennifer did not commit theft.**

The appellant's claim that Jennifer committed theft is based on testimony that she kept his phone until he left the house. Jennifer testified she had the phone for "[m]aybe an hour, two hours." On a police officer's bodycam video taken shortly after Jennifer found the text messages, Jennifer could be heard stating, "I took his phone and I wouldn't give it back." That said, at the hearing she explicitly denied any intent to steal or keep the phone and said she gave the appellant his phone back when he left.

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE § 31.03(a). The Penal Code gives three definitions of "deprive" in the Theft chapter:

(A)    to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

(B)    to restore property only upon payment of reward or other compensation; or

(C)    to dispose of property in a manner that makes recovery of the property by the owner unlikely.

13

TEX. PENAL CODE § 31.01(2).

Jennifer testified she did not intend to keep the phone, and she testified she gave the phone back within an hour or two. Based on a credibility determination, the trial court could have found Jennifer did not have the intent to deprive as defined by Section 31.02. *See Flores v. State*, 888 S.W.2d 187, 190–91 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (discussing "temporary use" doctrine and noting that intent to deprive must be inferred "from the words and acts of the accused"). The appellant has not shown that this finding, which is supported by the record, was an abuse of discretion.

The appellant has not shown the trial court abused its discretion by denying his motion to suppress. We overrule the appellant's first point.

## IV.      Analysis for Point Three

In his third point the appellant complains about the trial court's denial of his request for a jury instruction on Article 38.23. The appellant asked the trial court to instruct the jury regarding Jennifer's supposed commission of the offenses of theft, breach of computer security, and tampering with evidence, and with her supposed violations of the Fourth Amendment, Texas Constitution Article I, Section 9, and Code of Criminal Procedure Article 1.06.

As we have already held, there is no evidence Jennifer violated the Fourth Amendment. *See State v. Ruiz*, 577 S.W.3d 543, 546 (Tex. Crim. App. 2019). And

14

the appellant forfeited any complaint that Article I, Section 9 or Article 1.06 provide different or greater protections by failing to make specific arguments in the trial court (or in this Court). *See Pena*, 285 S.W.3d at 464. The trial court did not err by denying these requested instructions.

Regarding theft and breach of computer security, it is, at least, questionable whether the matter is preserved for our review. The appellant did not direct the trial court to specific evidence that raised a fact question for these offenses. *See Williams v. State*, 662 S.W.3d 452, 460–61 (Tex. Crim. App. 2021) (holding ordinary rules of preservation apply to "defensive-type" jury instructions and finding defendant's request for lesser-included instruction unpreserved because defendant did not direct trial court to specific evidence that would warrant instruction). The extent of the appellant's request was to claim there was "at least a scintilla of evidence" supporting the instructions without specifying which scintilla or scintillae that was.

Presuming this matter is preserved, the appellant has not directed this Court to evidence justifying the instruction. The extent of his appellate argument is to point to Jennifer's trial testimony that she had the appellant's permission to search his phone, and to a police officer's trial testimony that the officer did not believe Jennifer "acted inappropriately or illegally." The appellant claims this "interjected the issue of the legality of [Jennifer's] conduct." But as the State points out, uncontroverted testimony that Jennifer acted lawfully does not create a fact question. The trial court

15

did not err in denying the requested instruction based on this evidence. *See Shpikula v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

The appellant requested an instruction on tampering based on his claim that Jennifer gave police "only portions" of certain text exchanges she had with the appellant, "not allowing the defendant to see the entire conversation." Even if excerpting text message conversations could count as tampering with evidence—a proposition the appellant does not support with argument or authority—an Article 38.23 instruction is appropriate only if there was a fact question as to whether evidence was "obtained" in violation of law. TEX. CODE CRIM. PROC. art. 38.23(a). If Jennifer tampered with evidence already in her possession, she did not obtain the evidence in violation of law; obtaining the evidence and tampering with the evidence were separate events. *See Reeves v. State*, 969 S.W.2d 471, 487 (Tex. App.—Waco 1998, pet. ref'd) (defendant's claim that lawfully obtained evidence was inadmissible because of subsequent unlawful transfer from county to county did not implicate Article 38.23 because it did not allege evidence was "obtained" in violation of law). The trial court did not err in denying this requested instruction.

We overrule the appellant's third point.

**Points Two and Four**

Near the end of trial, the appellant asked to have two witnesses testify remotely via Zoom. The trial court denied this request. In his second point the appellant claims this was error.

The appellant filed a motion for new trial based on this denied request. The trial court held a hearing and denied this motion. In his fourth point the appellant claims this denial was error.

## I.      Factual Background

### A.      The trial court denied the appellant's request to have two witnesses testify via Zoom.

The State presented witnesses across three days, August 27, 28, and 29. On the 28th, Jane Doe testified to several instances of abuse, including one instance that occurred inside the appellant's camper trailer. She gave no information about the camper.

After the State passed the witness, the trial court dismissed the jury for the rest of the day. The trial court asked when the State expected to be done with its evidence. The prosecutor said the next day. The Court emphasized to defense counsel the importance of having his witnesses ready when the State rested. Defense counsel responded by asking the State to make sure all the witnesses it had subpoenaed were available.

The next day, on cross-examination, Jane Doe said the appellant used a camper when he was away working in Louisiana but he brought the camper with him whenever he came home. Defense counsel asked a series of questions to clarify if Jane Doe was testifying that the appellant brought his camper home every single time; her answer to the final question in this series was that "[i]f [the appellant] was home for a long period of time, that's when he would bring [the camper] home."

After Jane Doe testified, the State called four more witnesses then rested. The defense called the appellant's mother to testify. When the mother stepped down, defense counsel informed the trial court for the first time that he had a witness "from Louisiana that we're trying to set up a Zoom with." The trial court interjected: "We're not going to do a Zoom. That ain't going to happen." The trial court added, "I don't even think I have the ability [to have a witness testify via Zoom]." The trial court said it was aware of a case from Liberty County that was reversed because a witness testified via remote video.[4]

Defense counsel responded by distinguishing the Liberty County case, saying that reversal was because a State's witness testified remotely in violation of the defendant's Confrontation Clause rights, but here it was a defendant trying to call

---

[4] At the motion-for-new-trial hearing the trial court identified the case as *Haggard v. State*, No. 09-17-00319-CR, 2021 WL 2557955 (Tex. App.—Beaumont June 23, 2021, pet. ref'd) (mem. op., not designated for publication).

the witness to testify remotely and the State did not have confrontation rights. The trial court said it would treat the State with the same rules as the defense.

Defense counsel said the defense was missing another witness, who had not been subpoenaed and who was still at his home and "maybe not coming out." The trial court told defense counsel to proceed with his next witness, and if at the end of that witness's testimony there were no more witnesses present, "the evidence is going to be closed." The defense called the appellant's sister to testify. After that testimony, the defense said it had no more witnesses present. The trial court told the jury "the evidence is closed" and dismissed them for the day.

Defense counsel made a proffer regarding two proposed Zoom witnesses. The first was a witness to rebut part of Jane Doe's testimony. Defense counsel said that based on pretrial discovery he believed Jane Doe would testify that only one instance of abuse occurred in the trailer. Then defense counsel inaccurately claimed that Jane Doe had testified to "numerous times . . . in the camper." Defense counsel said that Jane Doe's testimony surprised him, which is why he did not have the Louisiana witness ready.

Defense counsel explained that the Louisiana witness worked at the front office of the RV park where the appellant stayed while working. The Louisiana witness would testify that many workers kept their campers at the RV park but they left them there when making short return trips home. Defense counsel said the

witness was aware of comings and goings at the RV park. Defense counsel said this witness would produce the appellant's rental records for several months when the appellant was alleged to be abusing Jane Doe. Defense counsel explained that the witness's testimony would rebut Jane Doe's testimony that the appellant brought the trailer home every time, which would "put [Jane Doe's] credibility in absolute doubt." The prosecutor said the State objected to this witness testifying via Zoom and the trial court denied the appellant's request.

The second proposed witness was Bruce Horn. Defense counsel said Horn was elderly and could not get around on his own. Defense counsel said Horn was an expert who would testify that police had violated protocol by not getting the appellant's phone records, and that the State's expert witness had mishandled the data dump of the appellant's phone.

Defense counsel said that Horn was prepared to testify in person or via Zoom, but he was not there that day. The trial court pointed out that the State's witnesses had been present throughout trial, and the trial court had advised the defense to have its witnesses at the courthouse on the 29th. The trial court asked the prosecutor if the State objected to Horn testifying via Zoom. The State objected. The trial court said it would not allow Zoom testimony unless both parties agreed.

Legally, defense counsel claimed denying his request to have witnesses testify via Zoom "denies [the appellant] his right to a [fair] trial under the Sixth

Amendment. It denies him his right to due process under the Fourteenth [Amendment], and due course of law under [Texas Constitution] Article I, Section 9."

**B.** **The appellant moved for a new trial based on the denial of his request to call witnesses via Zoom. The trial court heard testimony from one proposed Zoom witness and received an affidavit from another, then denied the motion.**

The appellant moved for a new trial based on his denied request to call Zoom witnesses. In addition, the appellant's motion cited *Harper v. State*, 2024 WL 3579499, No. 08-23-00106-CR (Tex. App.—El Paso, July 29, 2024, pet. ref'd) (mem. op., not designated for publication). In that case, decided a month before the appellant's trial, the Eighth Court of Appeals overturned a conviction due to the trial court's refusal to let a defense witness testify via Zoom.

Attached to the motion was an affidavit from Patricia Livings. Livings said she worked at the Colonial RV Park in La Place, Louisiana. She said she would testify that it would be very unusual for the oil field workers who stayed at the RV park to take their campers home for short trips, and she believed the appellant did not take his camper home with him during his stay at the RV park. She said that defense counsel contacted her "in late August" regarding the appellant's stay at the RV park. She said she told defense counsel she would be able to testify the next morning via Zoom. The affidavit made no mention of whether she could have attended trial.

21

At the hearing on this motion, defense counsel presented testimony from Horn. Horn said he was a forensic investigator with over thirty years' experience. He said that screenshots of text messages could be manipulated, and he was concerned by the lack of metadata to validate some of the State's evidence. He said his testimony would have explained these concerns to the jury. He said his testimony would have taken two to three hours on direct examination.

Regarding his availability, Horn said that he could have testified via Zoom on August 29th, and he would have been available to testify in person on the 30th if the trial court had allowed the defense to call him. Horn said that defense counsel had asked him to be "available" during the trial but had not asked him to be physically present.

After testimony, the trial court and defense counsel had several exchanges. The trial court made clear it believed defense counsel made an intentional decision to not have Horn present. The trial court said it would have allowed Horn to testify on the 30th if defense counsel had made clear Horn would have been there in person, but defense counsel "hung [his] hat" on presenting witnesses via Zoom. The trial court said it believed defense counsel was aware of *Harper* at the time and made a "tactical decision" to get an adverse ruling on presenting testimony via Zoom. Defense counsel denied knowing of *Harper* before he made his proffer on the afternoon of the 29th.

22

In his closing argument defense counsel noted that the facts of his situation were like those in *Harper* and argued for the importance of Horn's and Living's testimony. In response, the State argued that the issue relating to the camper was not as important as defense counsel was making it. The State also pointed to Code of Criminal Article 38.076, which has specific provisions for remote testimony from certain types of forensic analysts. The State noted that defense counsel had not followed the procedures of that article, which requires agreement by the parties and approval by the trial court. The trial court denied the motion and reiterated its belief that defense counsel made a tactical decision not to have Horn at the courthouse.

## II.    Analysis for Point Two

In his second point the appellant complains about the trial court's denial of his original Zoom request. He relies on *Harper*, which is, as best we can tell, the only Texas case to hold that a defendant had an enforceable right to present live remote testimony. The State argues the trial court's ruling was a lawful application of Rule of Evidence 611, which gives the trial court considerable discretion to control the questioning of witnesses. But *Harper* allocates the burdens of proof and persuasion in ways that are inconsistent with the sort of traditional Rule 611 analysis the State urges. So we must first look at *Harper* and determine whether we will follow its approach, as the appellant urges.

**A.** *Harper* **held that a trial court abuses its discretion by excluding the defense's Zoom testimony if the State does not state a legal basis for objecting.**

Harper was charged with injury to a four-month-old child. *Harper*, 2024 WL 3579499, at *1. The child's injuries were uncontroverted. The question was whether Harper was criminally liable or whether it was an accident.

Before testimony began, the trial court spoke to the parties about their intentions to call witnesses via Zoom. The State said it had one proposed Zoom witness: a CPS investigator who had interviewed the appellant. The defense agreed to this testimony. Defense counsel declined to say whether the defense intended to call any witnesses via Zoom. *Id*. at *9.

After the State rested, the defense said it wished to call an expert witness to testify via Zoom. The prosecution objected without stating a legal reason. The trial court denied the request. The defense proffered that the expert would have testified the child's injuries were more consistent with accident than abuse. *Id.* at *10.

On appeal, Harper complained of the trial court's refusal to allow his Zoom witness. Harper claimed this violated his right to present a defense under the Sixth and Fourteenth Amendments. The State argued this was unpreserved because Harper did not make a constitutional argument in the trial court. The Eighth Court held that Harper's request to present Zoom testimony was sufficient to preserve error. The Eighth Court held that whether it was constitutional went only to a harm analysis

24

under Rule 44.2(b), which makes reversal more likely for constitutional errors than non-constitutional errors. *Id.* at *10.

The Eighth Court began its merits analysis by discussing "the guiding rules and principles that govern the admission of testimony by Zoom." *Id.* at *11. First, it noted that much of the caselaw about remote testimony involved defendants raising Confrontation Clause objections to remote testimony from prosecution witnesses. Those cases were inapplicable because the State does not have confrontation rights: "[T]he State, lacking confrontation clause rights, must therefore assert some other ground for exclusion." *Id.*

Next, the Eighth Court discussed Rule of Evidence 611, which provides:

> **(a) Control by the Court; Purposes.** The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
> (1) make those procedures effective for determining the truth;
> (2) avoid wasting time; and
> (3) protect witnesses from harassment or undue embarrassment.

TEX. R. EVID. 611(a). The Eighth Court noted that a trial court must exercise its discretion "in a way 'which is (1) reasonable and (2) in the pursuit of justice as well as efficiency.'" *Harper*, 2024 WL 3579499, at *11 (quoting *Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005)). The Eighth Court cited two civil cases for the proposition that there is no per se prohibition on remote video testimony. *Id.* (citing *In re J.C.*, 582 S.W.3d 497 (Tex. App.—Waco 2018, no pet.) and *Nikolenko*

25

*v. Nikolenko*, No. 01-20-00284-CV, 2022 WL 479988 (Tex. App.—Houston [1st Dist.] Feb. 17, 2022, pet. denied) (mem. op)).

The final source of authority the Eighth Court analyzed was the Texas Supreme Court's COVID-era emergency order. *See Harper*, 2024 WL 3579499, at*12. The order in effect at the time of Harper's trial stated that "all courts in Texas *may* . . . allow or require . . . a witness . . . to participate remotely, such as by teleconferencing, video conferencing, or other means." *Fifty-Fifth Emergency Order Regarding COVID-19 State of Disaster*, 660 S.W.3d 106, 107 (Tex. 2022) (emphasis added).

The Eighth Court stated that "[w]hether under Rule 611 or the [Emergency Order], we review the trial court's refusal to allow Appellant's witnesses to testify remotely for an abuse of discretion." *Harper*, 2024 WL 3579499, at *12. The Eighth Court noted that the only reason the trial court gave for excluding the Zoom testimony was that the State objected. The Eighth Court noted that "[a] trial court might consider a host of factors in deciding whether remote testimony is appropriate . . . [b]ut the trial court here was not presented with *any* factor weighing against [admitting the Zoom testimony]." *Id*. (emphasis in original). The Eighth Court held that excluding the evidence based on an objection that did not state a legal basis was an abuse of discretion:

> In summary, if there existed a per se rule preventing the use of Zoom testimony, then the State's refusal to waive that objection, even without

26

stating a reason at all, might be valid. But there is no per se prohibition, and a refusal to allow the Zoom testimony must be based on something more than the "State objects." The trial court effectively delegated the exercise of its discretion to the State, making the State the keeper of the keys to expert testimony for the case. The denial of [the expert's] testimony was neither reasonable nor in the pursuit of justice and efficiency.

*Id.*

The Eighth Court's harm analysis revisited whether the right to present Zoom testimony was constitutional. *Id.* at *13. It discussed two cases that held exclusion of in-person expert testimony rose to the level of a constitutional violation if it deprived the defendant the ability to present a defense. *Id.* (discussing *Cuadros-Fernandez v. State*, 316 S.W.3d 645, 664–65 (Tex. App.—Dallas 2009, no pet.) and *Stephenson v. State*, 226 S.W.3d 622, 628 (Tex. App.—Amarillo 2007, no pet.)). But it ultimately declined to answer whether the error in Harper's case was constitutional because the error was sufficiently harmful it required reversal even under the standard for non-constitutional error. *Id.* at *14.

## B.  We decline to follow *Harper*.

*Harper* is an unpublished criminal opinion from a different intermediate court. We are not bound by its holdings.

*Harper* observed that there is no "per se prohibition" on remote testimony and inferred that trial courts were required to admit remote testimony unless a party stated a valid *legal* objection. If *Harper* had based its holding on the COVID-era

emergency orders we would disregard it as a product of its time with little continuing impact. But *Harper* was ambiguous about the basis for its holding—invoking not just the emergency order but Rule 611 and multiple constitutional provisions as possible bases for its holding.

We find no basis for *Harper*'s holding in these other sources of authority. When we review the limits placed on remote testimony, it is clear that the ordinary form of evidence in a criminal trial is in-person testimony. Any time a party has an enforceable right to admit other types of testimony it is based on an exception found in a rule or statute. Because there is no statutory or rule-based exception for the remote testimony the appellant sought to admit here, we conclude he had no enforceable right to its admission and the trial court did not err by excluding it.

### 1. The Rules of Evidence and the Code of Criminal Procedure do not create an enforceable general right to present live remote testimony.

While it is tempting to view the issue in *Harper* and this case as one created by modern technology, the ability to introduce testimony from individuals not present in a courtroom has always existed. Affidavits, prior testimony, and depositions are all types of remote testimony, and they are not generally admissible in a criminal trial. Affidavits and prior testimony are hearsay that may become admissible only if the proponent shows an exception applies. *See* TEX. R. EVID. 801, 802, 803. Depositions in criminal cases are authorized only in narrow, statutorily

defined circumstances and are admissible only in narrower, statutorily defined circumstances. *See* TEX. CODE CRIM. PROC. arts. 39.02, 39.12; *see also* George Dix & John Schmolesky, 42 TEX. PRAC., CRIMINAL PRACTICE & PROCEDURE § 27:106 (3d ed.) ("The Court of Criminal Appeals commented in 1996, 'A deposition under Article 39.02 is of such an extraordinary nature that little jurisprudence exists to govern its application.' That is still the case.") (quoting *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)).[5]

The Code of Criminal Procedure has three provisions allowing live remote trial testimony in three very specific situations. The first is for child witnesses. *See* TEX. CODE CRIM. PROC. art. 38.071. This is limited in many ways: The child must be under the age of 13; the trial court must make a finding the child would be "unavailable to testify in the presence of the defendant;" and the trial must be for an offense specified in the statute (all of which are serious assaultive and sexual offenses). *Id.* § 1.

Article 38.071 has a long list of procedural and substantive requirements for remote testimony. *See id.* §§ 3–5. Furthermore, any use of remote testimony under Article 38.071 must comply with *Maryland v. Craig*, 497 U.S. 836 (1990), which held that to overcome a Confrontation Clause objection to the remote testimony of

---

[5]    This contrasts with civil practice, where depositions are an ordinary form of discovery and a deposition "may be used for any purpose in the same proceeding in which it was taken." TEX. R. CIV. P. 203.6(b).

a child witness, the prosecution must show that the remote testimony procedure was necessary to prevent trauma to the child. *Gonzales v. State*, 818 S.W.2d 756, 761–64 (Tex. Crim. App. 1991) (citing *Craig*, 497 U.S. at 855–56).

Second, Article 38.073 allows for remote testimony and deposition of an inmate in the custody of the Texas Department of Criminal Justice. TEX. CODE CRIM. PROC. art. 38.073. That article requires compliance with Article 27.18, which allows incarcerated defendants to enter pleas or waive rights by videoconferencing. *See id.* art. 27.18. That article has certain procedural requirements and, importantly, requires consent from both the defendant and the attorney representing the State. *See id.* art. 27.18(a)(1).

Third, Article 38.076 allows for remote testimony via video teleconference for certain forensic analysts in certain circumstances. *Id.* art. 38.076. The section applies only to forensic analysts employed by an accredited crime laboratory. *Id.* arts. 38.01 § 4-a(2), 38.076(a).[6] And use of the remote testimony requires approval from the trial court and all parties. *Id.* art. 38.076(b)(1).[7]

---

[6]    There is no record evidence the appellant's proposed expert witness, Horn, was so employed. The appellant did not invoke Article 38.076 in the trial court or on appeal.

[7]    *Harper* held that because "there is no per se prohibition [on live remote testimony], a refusal to allow the Zoom testimony must be based on something more than the 'State objects.'" *Harper v. State*, 2024 WL 3579499, No. 08-23-00106-CR, at *12 (Tex. App.—El Paso, July 29, 2024, pet. ref'd) (mem. op., not designated for publication). However, two of the three statutory provisions for live remote testimony (Articles 38.073 and 38.076) require the agreement of the parties, so "State objects" *is* sufficient to prevent a defendant from presenting live remote

30

Aside from these three narrow provisions, "[w]e are aware of no provision in the Code of Criminal Procedure that speaks to the admissibility of trial testimony of an ordinary witness via telephone or video link." *Frangias v. State*, 450 S.W.3d 125, 139 (Tex. Crim. App. 2013). *Harper* did not cite any such provision. Except where allowed by rule or statute, live remote testimony is an "unregulated method" of presenting testimony to which neither party has an enforceable right. *See id.* (holding defense counsel ineffective for not using statutory procedure to depose remote witness after trial court denied counsel's request to have remote witness testify via phone).

To the degree *Harper* held that Rule 611 required the trial court to admit live remote testimony in the absence of a legal objection, we disagree. Rule 611 gives a trial court broad discretion in controlling the mode and order of interrogation of witnesses and presentation of evidence. *Dang*, 154 S.W.3d at 619. We review a trial court's rulings under Rule 611 for an abuse of discretion. *Caron v. State*, 162 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

*Harper* looked only at the stated reason for excluding evidence, but on abuse-of-discretion review we must uphold a trial court's ruling if it is correct under any

---

testimony under those provisions. *Harper* did not explain why parties have a greater right to present live remote testimony in situations where it's not allowed for by statute than in situations where it is. Under *Harper's* reasoning, Articles 38.073 and 38.076 are restrictions on the use of live remote testimony.

31

applicable legal theory. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). This is true even if the trial court gave no reason or an incorrect reason. *Id.* Abuse-of-discretion review does not hinge on the trial court's stated reason. Instead, it hinges on whether the complaining party gave the trial court a legally correct basis for its desired ruling at the time it sought the ruling. *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Although the parties and trial court did not have an extensive discussion, the universal preference for in-person testimony in criminal trials is well-known, as are the downsides of live remote testimony. Relative to in-person testimony, live remote testimony reduces the ability of the jury to assess credibility. Live remote testimony introduces the possibility of the witness reading answers from an unseen document or being fed answers by someone off screen. Live remote testimony introduces the possibility of a witness modifying his or her appearance or voice through filters or other technology. Live remote testimony introduces the prospect of technological errors affecting a trial; if, for instance, an attorney objects but the witness does not hear the objection or the trial court's instruction to stop testifying, prejudicial statements may come before the jury.[8]

---

[8] The three statutory allowances for live remote testimony apply to situations that ameliorate some of these concerns. Child witnesses and inmate witnesses will be in a location controlled by officers of the court or prison guards and will likely use technology provided by the government. Forensic analysts will be testifying about test results or reports the parties already have, and personal demeanor is less

Aside from these general problems, live remote testimony presents a special problem in criminal trials because of the Confrontation Clause. The Confrontation Clause allows a defendant to demand in-person confrontation except in very narrow circumstances. *See Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim. App. 2020) (explaining *Craig*'s requirement that prosecution make case-specific showing that remote testimony is necessary to further public interest, like protecting child from trauma, to allow remote testimony over Confrontation Clause objection). Thus, a default rule allowing the general use of live remote testimony in criminal trials would, in practice, be a one-sided rule that only defendants could use.

It is not just that remote testimony has disadvantages, but in-person testimony has virtues. When the Federal Rules of Civil Procedure were amended to allow live remote testimony for civil cases, the amendment specified such testimony could occur only with "good cause in compelling circumstances and with appropriate safeguards." FED. R. CIV. P. 43(a). While the rule allowed live remote testimony, the Advisory Committee noted it should be the exception:

> The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.

important for assessing an analyst's credibility than for an eyewitness's. These situations contrast with what the appellant and Harper seem to have had in mind, which is a private individual using his or her own personal device and account to testify from wherever he or she happens to be.

FED. R. CIV. P. 43 advisory committee's note to 1996 amendment. The Advisory Committee went on to note that a trial court could insist on in-person testimony even if the parties agreed to live remote testimony. *Id.*

We do not limit our abuse-of-discretion review to the trial court's stated reason for its ruling. The concerns with live remote testimony and the virtues of in-person testimony are obvious enough that the objecting party and the trial court need not explain them on the record to justify the universal preference for in-person testimony. As with other exceptions to the in-person testimony requirement, the proponent of live remote testimony has the burden to show entitlement to present testimony in the requested manner. Absent a statutory or rule-based right to present testimony in a particular manner, a trial court does not abuse its discretion by denying the request based on the preference for in-person testimony. As with other evidentiary rulings, the trial court need not state or discuss the underlying rationale for its ruling for its decision to be upheld on appeal. To the degree the appellant relied on Rule 611 as a basis for requiring the admission of proposed Zoom testimony, the trial court did not abuse its discretion in denying his request.

### 2. The federal constitution does not give a general right to present live remote testimony.

The appellant also raises claims under the Sixth and Fourteenth Amendments to the federal constitution. *Harper* listed these amendments as possible bases for its

34

holding. *See* 2024 WL 3579499, at \*10, \*13–14 (noting that defendant raised constitutional claims, then explaining in harm analysis it would not specify whether error was constitutional).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (cleaned up). This right is violated when evidence rules "infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (cleaned up).

The Supreme Court has invoked this right to strike down state rules that did not serve a legitimate purpose and were outliers compared to the federal courts and other states. For instance in *Holmes*, the South Carolina Supreme Court had "radically changed and extended" a traditional rule of evidence to make it so a defendant could not admit evidence of an alternative perpetrator if the trial court believed there was "strong evidence" of the defendant's guilt. *Id*. at 328–39. The Supreme Court struck down this rule because it was arbitrary and did not serve the same, legitimate purpose as the traditional rule, which excluded only "evidence that has only a very weak logical connection to the central issues." *Id*. at 330.

The preference for in-person testimony in criminal cases is neither arbitrary nor unusual. It is the traditional rule of all American jurisdictions and the current practice of the federal courts. The federal courts, like Texas courts, have a rule allowing and regulating the general use of live remote testimony in civil cases, but not in criminal cases. *Compare* FED. R. CIV. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.") *to* FED. R. CRIM. P. 26 (making no such provision); *see* TEX. R. CIV. P. 21d(b). This is not an accidental omission: In 2002 the Supreme Court declined to forward to Congress a proposed amendment to Rule 26 that would have allowed live remote testimony in criminal trials. *Order of the Supreme Court*, 207 F.R.D. 89, 91 (2002).

The result is that in federal courts, except for a narrow exception allowing child witnesses to testify remotely in certain situations, *see* 18 U.S.C. § 3409(b), the use of live remote testimony in a criminal trial is an unregulated practice, just as in Texas courts. Examples can be found of federal courts denying defendants' requests outright based on the lack of a rule allowing live remote testimony,[9] denying requests

---

[9] *See, e.g.*, *United States v. Diaz*, 356 Fed. Appx. 117, 128 (10th Cir. 2009), *as amended on reh'g in part* (Jan. 28, 2010); *United States v. Adeoye*, No. 4:21-CR-253(13), 2024 WL 113765, at \*2 (E.D. Tex. Jan. 8, 2024); *United States v. Young*, No. 3:21-CR-0417-X, 2024 WL 2141959, at \*1 (N.D. Tex. May 13, 2024).

based on failure to make an adequate showing of need and reliability,[10] and granting requests where the court believed the defense had shown need and reliability.[11]

In light of the Supreme Court's explicit refusal to recommend a rule allowing remote testimony, and the unregulated federal practice on remote testimony, we cannot declare that the "right to present a complete defense" requires trial courts always to allow defense witnesses to testify remotely in a criminal trial. The Supreme Court has invoked this right to strike down only rules that were inconsistent with federal practice and the practice of other states. *See, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 687–89 (1986) (declaring unconstitutional state rule excluding defendant's evidence about circumstances of confession, and noting Kentucky rule

---

[10]   *See, e.g.*, *United States v. Pritchard*, No. CR-23-00232-001-PHX-KML, 2024 WL 4347815, at *3 (D. Ariz. Sept. 30, 2024) (denying request but stating subsequent request might be granted if it explained why witnesses would suffer hardship travelling to trial, and "address[ed] the locations from which the witnesses will testify, the stability of their internet connections, provisions for cameras that will reflect the witnesses' demeanor in a manner akin to live testimony, the witnesses' ability to see counsel and the courtroom . . . and measures taken to ensure the witness is not being coached or influenced during testimony, and that the witness is not improperly referring to documents." (quotation omitted)); *United States v. Banki*, No. 10 CR. 08 (JFK), 2010 WL 1063453, at *4 (S.D.N.Y. Mar. 23, 2010) (denying request because defendant's only claim of necessity was that depositions would take too long).

[11]   *See, e.g.*, *United States v. Babichenko*, No. 1:18-CR-00258-BLW, 2021 WL 1759851, at *2 (D. Idaho May 4, 2021) (granting motion to allow fact witnesses to testify remotely from Brazil based on COVID-era restrictions on travel from Brazil); *United States v. Fox*, No. CR16-0100-JCC, 2018 WL 1517674, at *2 (W.D. Wash. Mar. 28, 2018) (granting motion to allow incarcerated witness to testify remotely).

conflicted with federal case law, federal rules, and "the decisions of every other state court to have confronted the issue"); *Rock v. Arkansas*, 483 U.S. 44, 57–59, 62 (1987) (declaring unconstitutional state rule that placed limitation on defendant's right to testify not found in other jurisdictions). The Supreme Court has emphasized that states are not prohibited from excluding defense evidence under ordinary, "well-established" rules. *Holmes*, 547 U.S. at 326 (noting constitutionality of Rule of Evidence 403). And the Supreme Court has upheld a challenged rule when federal and state practice on the subject was mixed. *See United States v. Scheffer*, 523 U.S. 303, 311–12 (1998) (upholding rule of evidence that prohibited all evidence of polygraphs, where state courts and federal circuits had varied approaches to subject, some of which were consistent with challenged rule).

The universal preference for in-person testimony is not an arbitrary rule and Texas practice is not an outlier. To the degree the appellant relied on the Sixth and the Fourteenth Amendments as a basis for admitting live remote testimony, the trial court did not abuse its discretion by denying his request.

C. **The appellant forfeited his state constitutional claims by not explaining how the Texas constitution offered different or greater protections than the federal constitution.**

Both in the trial court and in this Court the appellant has invoked the Texas constitution's "due course of law" guarantee. TEX. CONST. art. I, § 13. However, neither in the trial court nor this Court has he presented argument or authority for

38

how that provision offers different or greater protections than the federal constitutional provisions he has invoked. He has forfeited this claim. *See Pena*, 285 S.W.3d at 464.

Having addressed the appellant's claimed bases for admitting remote testimony, we overrule his second point of error.

## III.     Analysis for Point Four

The only claims in the appellant's motion for new trial related to the trial court's decision not to allow his witnesses to testify via Zoom. Based on our holdings related to the appellant's second point, we conclude the trial court did not abuse its discretion in denying the appellant's motion for new trial. We overrule his fourth point.

### Conclusion

We affirm the trial court's judgments.

Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

Publish.